InterestFirst™ ADJUSTABLE RATE NOTE
One-Year Treasury Index - Rate Cap



**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 8th _____, 2011      Mountain Lakes _____      NJ _____
                                   (City)                        [State]

2 Candlewick Drive, Montville, NJ   07082 _____
                                  [Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $750,000.00 _____ (this amount is called "Principal"), plus interest, to the order of Lender.  The Lender is HUDSON CITY SAVINGS BANK. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of    4.625 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A)   Time and Place of Payments

I will make a payment on the first day of every month, beginning on June 1, 2011 _____.  Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note.  Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on May 1, 2041 _____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WEST 80 CENTURY ROAD, PARAMUS NJ 07652** or at a different place if required by the Note Holder.

### (B)   Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $2,890.63 _____ before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date.  The Note Holder will notify me prior to the date of change in monthly payment.

### (C)   Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)   Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of May, 2016 _____, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

Borrower's Initials _____

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarter percentage points ( 2.75% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment

#### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than ____6.625 % or less than ____2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than ____9.625 %.

#### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

#### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

### 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be five (5%) of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

Borrower's Initials:

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Borrower's Initials:

Form 3531   11/01
*(page 3 of 4)*

Transfer of the Property or a Beneficial Interest in Borrower. As used in the Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for  , contract for deed, installment sales contract  escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Francis Joseph Prudente          -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

                            *[Sign Original Only]*

EDWARD P MCCLOUD
Notary Public, State of New Jersey
My Commission Expires
February 26, 2012

## GENERIC RIDER TO NOTE

THIS RIDER is made this      8th      , day of      April      ,  2011    , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note"), Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") [collectively "the Loan Documents"] of the same date given by the undersigned (the "Borrower") to secure the Note to HUDSON CITY SAVINGS BANK (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2 Candlewick Drive, Montville, NJ 07082

(Property Address)

IN THE EVENT OF AN INCONSISTENCY BETWEEN THIS RIDER AND ANY OF THE AFOREMENTIONED LOAN DOCUMENTS, THIS RIDER SHALL CONTROL.

THE FOLLOWING PROVISIONS OF THIS RIDER SHALL BE APPLICABLE UNLESS THE LOAN SECURED BY THE LOAN DOCUMENTS IS SOLD TO THE FEDERAL HOME LOAN MORTGAGE CORPORATION OR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION OR ANY OTHER PURCHASING ENTITY IN WHICH EVENT THIS RIDER SHALL TERMINATE AND BECOME NULL AND VOID.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument and Note, Borrower and Lender further covenant and agree as follows:

### 1. OWNER OCCUPANCY (excluding loans approved under Investment category)

Any provision of the Note or Security Instrument to the contrary notwithstanding, the following provision shall be applicable. If during the term of the Note and Security Instrument the Lender discovers that the property is not being used by the Borrower as either a primary or secondary residence as originally stated, but rather is being used by the Borrower as either a rental or investment property, then:

(i) if the Note is an Adjustable Rate Note, the Lender will have the option of immediately increasing the interest rate by one (1%) percentage point, increasing the "margin" one (1%) percentage point, and increasing the lifetime caps on the interest rate by one (1%) percentage point: or

(ii) if the Note is a Fixed Rate Note, the Lender will have the option of immediately increasing the interest rate by one (1%) percentage point: and

(iii) failure to make payments after the aforesaid increases shall be a Default under the Note and a Breach of Covenants under the Security Instrument.

### 2. BORROWERS RIGHT TO REINSTATE

Paragraph 19 of the Security Instrument is amended to add that in the event the Borrower seeks to reinstate, by curing a default through a bankruptcy proceeding, the Lender shall be entitled to interest on the amount necessary to cure the default at the rate specified in the Note securing this Security Instrument.

### 3. BORROWERS RIGHT TO PREPAY

Any provisions to the Note or Security Instrument to the contrary notwithstanding, the following provision shall be applicable. Any partial prepayment must be received on the installment due date. Any partial prepayment received on other than the installment due date will be considered as received on the next due date.

Borrower's Initials: _____

After Recording Return To:
Hudson City Savings Bank
West 80 Century Road
Paramus, New Jersey 07652
Attention: Post Closing Dept.

1st Rate Title & Settlement, LLC
115 Route 46 West
Suite F
Mountain Lakes, NJ 07046

MORRIS COUNTY, NEW JERSEY
JOAN BRAMHALL, COUNTY CLERK
MTG-OR BOOK 21778 PG 0719
RECORDED 04/15/2011 14:33:12
FILE NUMBER 2011026876
RCPT #: 6255361 RECD BY: ann
RECORDING FEES   140.00
MARGINAL NOTATION CD 0.00 ST 0.00

ORIGINAL

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 08, 2011 _____, together with all Riders to this document.
(B) "Borrower" is Francis Joseph Prudente & Antonietta Prudente, husband & wife
_____

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is HUDSON CITY SAVINGS BANK. Lender is a federally chartered savings bank organized and existing under the laws of The United States of America, and whose principal office and mailing address is West 80 Century Road, Paramus, New Jersey 07652. Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated April 08, 2011 _____.
The Note states that Borrower owes Lender Seven Hundred Fifty Thousand And Zero/100 _____
_____ Dollars (U.S. $750,000.00 _____) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _____ May 01, 2041 _____.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) Legal Description |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | ☒ Generic Rider |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Morris _____ :    SEE DESCRIPTION RIDER ANNEXED HERETO

Being the same premises conveyed to the said Mortgagors by Deed from Strike Associates, L.L.C., dated August 4th, 2000, recored October 5th, 2000 in the Morris County Clerks/Register's Office in Deed Book 5261, Page 063.

which currently has the address of 2 Candlewick Drive _____,
                                                    [Street]
Montville _____, New Jersey ___ 07082 ___ ("Property Address"):
      [City]                                    (Zip Code)

Borrower's Initials: _____

appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a)~cash; (b)~money order; (c)~certified check, bank check, treasurer's check or cashier's check, provided any such check is

drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section~2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a)~interest due under the Note; (b)~principal due under the Note; (c)~amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender~in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds~for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and

Borrower's Initials: _____

Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b)~contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a)~a one-time charge for flood zone determination, certification and tracking services; or (b)~a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a)~Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b)~any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in

Borrower's Initials:

FNMA NJMtg3031 (Pages 1 to 7) - Form - NMort

destruction of, or damage to, the Property, if the restoration or repair is not economically feasible, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Property only if Lender has released such proceeds. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a)~Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b)~there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c)~Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a)~paying any sums secured by a lien which has priority over this Security Instrument; (b)~appearing in court; and (c)~paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section~9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.    Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically

Borrower's Initials: _____

feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree

in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co_signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the

Borrower's Initials:

NEW JERSEY--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3031  1/01  *(page 5 of 7 pages)*

event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a)-words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b)-words in the singular shall mean and include the plural and vice versa; and (c)-the word "may" gives sole discretion without any obligation to take any action.

**17.    Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.    Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.    Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b)-such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a)-cash; (b)-money order; (c)-certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d)-Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section-18.

**20.    Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.    Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a)-that is in violation of any Environmental Law, (b) -which creates an Environmental Condition, or (c)-which,

due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c)-any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.    Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c)**

Borrower's Initials:

FNMA NJMtg3031 (Pages 1 to 7)  -  Form - NMort

'a date, not less than 30 ~ from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et~seq.~of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.    **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                    _____(Seal)
                                                    Francis Joseph Prudente              - Borrower

                                                    _____(Seal)
                                                    Antonietta Prudente                  - Borrower

_____                    _____(Seal)
                                                                                         - Borrower

                                                    _____(Seal)
                                                                                         - Borrower


_____ [Space Below This Line For Acknowledgment] _____

STATE OF NEW JERSEY _____ Morris _____ County SS:

On this 8th    day of April, 2011        before me, the subscriber personally appeared
Francis Joseph Prudente & Antonietta Prudente, husband & wife

_____
_____

who I am satisfied, _are_ the person(s) named in and who executed the within instrument, and thereupon _they_ acknowledged that _they_ signed, sealed and delivered the same as _their_ act and deed, for the purposes therein expressed.

EDWARD P MCCLOUD
Notary Public, State of New Jersey
My Commission Expires
February 26, 2012

_____ (Space Below This Line Reserved For Lender and Recorder)

After Recording Return To:
Hudson City Savings Bank
West 80 Century Road
Paramus, New Jersey 07652
Attention: Post Closing Dept.

1st Rate Title & Settlement, LLC
115 Route 46 West
Suite F
Mountain Lakes, NJ 07046

- FNMA NJMtg3031 (Pages 1 to 7) - Form - NMost

**LEGAL DESCRIPTION**

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Montville Township, the Municipality of Township of Montville, in the County of Morris, State of NJ:

Being known and designated as Lot No. 81.15 in Block No. 39.09 on map entitled "Final Major Subdivision Plat-Jade Commons-Montville, Morris County, New Jersey", duly filed in the Morris County Clerk's Office on May 12th, 1999 as Map No. 5470.

BEGINNING at the intersection of the northerly line of Candlewick Drive (50 foot right of way), and the easterly line of Lot 81.14, Block 39.09 as shown on said filed Map; THENCE

(1) Along the easterly line of Lot 81.14, North 15 degrees 59 minutes 06 seconds, West 250.54 feet to the southerly line of Lot 81.12, Block 39.09; THENCE

(2)Along said southerly line of Lot 81.12, South 70 degrees 02 minutes 14 seconds, West, 127.56 feet to a point; THENCE

(3) South 14 degrees 48 minutes 45 seconds, East 389.74 feet to the aforementioned northerly line of Candlewick Drive;THENCE

(4) Along said Candlewick Drive in a northwesterly direction along a curve to the left having a radius of 125.00 feet, an arc length of 196.35 feet, a central angle of 90 degrees 00 minutes 00 seconds, a chord bearing of North 58 degrees 30 minutes 45 seconds, West and a chord length of 176.73 feet to the point and place of BEGINNING.

FOR INFORMATION PURPOSES ONLY: Tax Lot 81.15, Tax Block 39.11 on the Official Tax Map of Township of Montville, NJ.

## GENERIC RIDER TO MORTGAGE

THIS RIDER is made this      8th      , day of      April      ,   2011   , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note"), Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") [collectively "the Loan Documents"] of the same date given by the undersigned (the "Borrower") to secure the Note to HUDSON CITY SAVINGS BANK (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2 Candlewick Drive, Montville, NJ 07082

(Property Address)

IN THE EVENT OF AN INCONSISTENCY BETWEEN THIS RIDER AND ANY OF THE AFOREMENTIONED LOAN DOCUMENTS, THIS RIDER SHALL CONTROL.

THE FOLLOWING PROVISIONS OF THIS RIDER SHALL BE APPLICABLE UNLESS THE LOAN SECURED BY THE LOAN DOCUMENTS IS SOLD TO THE FEDERAL HOME LOAN MORTGAGE CORPORATION OR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION OR ANY OTHER PURCHASING ENTITY IN WHICH EVENT THIS RIDER SHALL TERMINATE AND BECOME NULL AND VOID.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument and Note, Borrower and Lender further covenant and agree as follows:

### 1. OWNER OCCUPANCY (excluding loans approved under Investment category)

Any provision of the Note or Security Instrument to the contrary notwithstanding, the following provision shall be applicable. If during the term of the Note and Security Instrument the Lender discovers that the property is not being used by the Borrower as either a primary or secondary residence as originally stated, but rather is being used by the Borrower as either a rental or investment property, then:

(i)   if the Note is an Adjustable Rate Note, the Lender will have the option of immediately increasing the interest rate by one (1%) percentage point, increasing the "margin" one (1%) percentage point, and increasing the lifetime caps on the interest rate by one (1%) percentage point: or

(ii)   if the Note is a Fixed Rate Note, the Lender will have the option of immediately increasing the interest rate by one (1%) percentage point: and

(iii)   failure to make payments after the aforesaid increases shall be a Default under the Note and a Breach of Covenants under the Security Instrument.

### 2. BORROWERS RIGHT TO REINSTATE

Paragraph 19 of the Security Instrument is amended to add that in the event the Borrower seeks to reinstate, by curing a default through a bankruptcy proceeding, the Lender shall be entitled to interest on the amount necessary to cure the default at the rate specified in the Note securing this Security Instrument.

### 3. BORROWERS RIGHT TO PREPAY

Any provisions to the Note or Security Instrument to the contrary notwithstanding, the following provision shall be applicable. Any partial prepayment must be received on the installment due date. Any partial prepayment received on other than the installment due date will be considered as received on the next due date.

### 4. ADJUSTABLE RATE PROVISIONS

If this loan is an Adjustable Rate loan, the Adjustable Rate Rider to the Security Instrument is amended as follows:

(i) "The Index", Paragraph 4(B) shall read:

Borrower's Initials: 

Generic Rider to Mortgage - Form - GenericRider to Mortgage - pg.1

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the monthly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "**Current Index**".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(ii) Calculation of Changes, Paragraph 4(C) shall read:

Before each Change Date, the Note Holder will calculate my new interest rate by adding **2.75** percentage points (the "Margin") to the Current Index. In the event that this figure is not evenly divisible by one-eighth, then the Note Holder will round the result to the next highest one-eighth of one percentage point (0.125%). Subject to the limits as stated in Section 4(D) this new figure will be my "**New Interest Rate**" until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(iii) Section 18 of the Security Instrument and Paragraph (B) of the Adjustable Rate Rider to the Security Instrument are amended to delete the following language:

**Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.**

### 5. LATE CHARGES ON OVERDUE PAYMENTS

Any provisions to the Note or Security Instrument to the contrary notwithstanding, the following provision shall be applicable. The amount of the late charge will be 5% of any overdue payment of principal, interest and, if applicable taxes, and insurance.

### 6.  LEASEHOLD ESTATE

Paragraph 9 of the Security Instrument is amended to add that in the event the mortgage is secured by

a leasehold estate Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider which amends the Note and Security Instrument.

Borrower _____    Francis Joseph Prudente

Borrower _____    Antonietta Prudente

Borrower _____

Borrower _____

## ADJUSTABLE RATE RIDER
(1 Year Treasury Index -- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___8th___ day of _____April, 2011_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Hudson City Savings Bank (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2 Candlewick Drive, Montville, NJ  07082
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of ___4.625___%. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of _____May, 2016_____, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarter percentage points (2.75%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than ___6.625___% or less than ___2.750___%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than ___9.625___%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Borrower's Initials:

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of accelera-tion. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Francis Joseph Prudente            -Borrower

_____ (Seal)
Antonietta Prudente               -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--ARM 5-2--Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3111   1/01  *(page 2 of 2 pages)*
- FHMA Arm Rider 3111 - Form - FNMA3111RiderRev2006

# New York State
# Department of Financial Services

**I, SHIRIN EMAMI,** Executive Deputy Superintendent of Financial Services of the State of New York, **DO HEREBY CERTIFY**:

**THAT,** in accordance with the provisions of Section 601-b of the New York Banking Law, there were filed in the office of the Superintendent of Financial Services, and shall be effective, as of 12:02 a.m., November 1, 2015, a Bank Plan of Merger, dated as of October 8, 2015, and other required documents, providing for the merger of **HUDSON CITY SAVINGS BANK**, Paramus, New Jersey, with and into **MANUFACTURERS AND TRADERS TRUST COMPANY**, Buffalo, New York, under the name **MANUFACTURERS AND TRADERS TRUST COMPANY**, which merger was approved by the Superintendent of Financial Services on October 8, 2015;

**THAT,** the following banking offices of HUDSON CITY SAVINGS BANK have become branch offices of MANUFACTURERS AND TRADERS TRUST COMPANY:

West 80 Century Road, Paramus, Bergen County, NJ 07652
288 Main Street, Orange, Essex County, NJ 07050
587 Summit Avenue, Jersey City, Hudson County, NJ 07306
1168 State Route 34, Aberdeen, Monmouth County, NJ 07747
90 Barclay Center, Cherry Hill, Camden County, NJ 08034
580 North Main Street, Barnegat Township, Ocean County, NJ 08005
55 Brick Boulevard, Brick, Ocean County, NJ 08723
547 Broadway, Bayonne, Hudson County, NJ 07002
903 Montauk Highway, Bayport, Suffolk County, NY 11705
532 Ocean Avenue, Jersey City, Hudson County, NJ 07305

335 Atlantic City Boulevard, Bayville, Ocean County, NJ 08721

2530 Kennedy Boulevard, Jersey City, Hudson County, NJ 07304

731 Brick Boulevard, Brick Ocean County, NJ 08723

2102 Montauk Highway, Bridgehampton, Suffolk County, NY 11932

247 Federal Road, Brookfield, Fairfield County, CT 06804

186 Route 52, Carmel, Putnam County, NY10512

248 Main Street, Center Moriches, Suffolk County, NY 11934

2335 Church Road, Cherry Hill, Camden County, NJ 08002

209 Route 206 South, Chester, Morris County, NJ 07930

1210 Route 130 North, Cinnaminson, Burlington County, NJ 08077

680 Anderson Avenue #684, Cliffside Park, Bergen County, NJ 07010

887 Allwood Road, Clifton, Passaic County, NJ 07012

146 Greenwood Avenue, Bethel, Fairfield County, CT 06801

100 East Putnam Avenue, Cos Cob, Fairfield County, CT 06807

355 Applegarth Road, Monroe, Middlesex County, NJ 08831

18 James Street, Florham Park, Morris County, NJ 07932

547 Boston Post Road, Darien, Fairfield County, CT 06820

10 West Main Street, Denville, Morris County, NJ 07834

408 East Madison Avenue, Dumont, Bergen County, NJ 07628

126 North Main Street, East Hampton, Suffolk County, NY 11937

370 Route 130, East Windsor, Mercer County, NJ 08520

330 Kinderkamack Road, Emerson, Bergen County, NJ 07630

50 East Palisade Avenue, Englewood, Bergen County, NJ 07631

837 Post Road, Fairfield, Fairfield County, CT 06824

889 Fischer Boulevard, Toms River, Ocean County, NJ 08753

166 State Route 31, Flemington, Hunterdon County, NJ 08822

2220 Forest Avenue, Staten Island, Richmond County, NY 10303

303 Main Street, Fort Lee, Bergen County, NJ 07024

779 Franklin Avenue, Franklin Lakes, Bergen County, NJ 07417

351 West Main Street, Freehold, Monmouth County, NJ 07728

45 Outwater Lane, Garfield, Bergen County, NJ 07026

897 Prospect Street, Glen Rock, Bergen County, NJ 07452

51 US Highway 22, Green Brook, Somerset County, NJ 08812

74825 Main Road, Greenport, Suffolk County, NY 11944

200 Grand Avenue, Hackettstown, Warren County, NJ 07840

116 Kings Highway East, Haddonfield, Camden County, NJ 08033

18 East Montauk Highway, Hampton Bays, Suffolk County, NY 11946

389 Halstead Avenue, Harrison, Westchester County, NY 10528

313 Henry Street, Orange, Essex County, NJ 07050

641 Shunpike Road, Chatham, Morris County, NJ 07928

1018 Washington Street, Hoboken, Hudson County, NJ 07030

4106 Hylan Boulevard, Staten Island, Richmond County, NY 10308

89 Interstate Shopping Center, Ramsey, Bergen County, NJ 07446

72 Mount Vernon Place, Newark, Essex County, NJ 07106

495 Manila Avenue, Jersey City, Hudson County, NJ 07302

216 Passaic Avenue, Kearny, Hudson County, NJ 07032

3562 State Route 27, Kendall Park, Middlesex County, NJ 08824

782 Lacey Road, Forked River, Ocean County, NJ 08731

2100 Route 70, Manchester, Ocean County, NJ 08759

416 South Main Street, Forked River, Ocean County, NJ 08731

167 East Kennedy Boulevard #169, Lakewood, Ocean County, NJ 08701

2040 Boston Post Road, Larchmont, Westchester County, NY 10538

1000 Route 70, Lakewood, Ocean County, NJ 08701

232 South Livingston Avenue, Livingston, Essex County, NJ 07039

304 Essex Street, Lodi, Bergen County, NJ 07644

435 Lewandowski Street, Lyndhurst, Bergen County, NJ 07071

340 Main Street, Madison, Morris County, NJ 07940

115 Franklin Turnpike, Mahwah, Bergen County, NJ 07430

300 Mamaroneck Avenue, Mamaroneck, Westchester County, NY 10543

601 Route 72 East, Manahawkin, Ocean County, NJ 08050

1965 State Route 57, Hackettstown, Warren County, NJ 07840

455 County Road, Marlboro, Monmouth County, NJ 07746

75 Highway 35, Middletown, Monmouth County, NJ 07701

2212 Hylan Boulevard, Staten Island, Richmond County, NY 10306

85 Goodwin Avenue, Midland Park, Bergen County, NJ 07432

62-64 Main Street, Millburn, Essex County, NJ 07041

301 Route 25A, Miller Place, Suffolk County, NY 11764

3031 East Main Street, Mohegan Lake, Westchester County, NY 10547

525 Main Street, Monroe, Fairfield County, CT 06468

7533 Bergenline Avenue, North Bergen, Hudson County, NJ 07047

228 South Main Street, New City, Rockland County, NY 10956

715 River Road, New Milford, Bergen County, NJ 07646

88 Fourth Street, New Rochelle, Westchester County, NY 10801

523 Shoppes Boulevard, North Brunswick, Middlesex County, NJ 08902

379 Ramapo Valley Road, Oakland, Bergen County, NJ 07436

3897 US Highway 9, Old Bridge, Middlesex County, NJ 08857

249 Kinderkamack Road, Oradell, Bergen County, NJ 07649

60 Park Place, Newark, Essex County, NJ 07102

240 Baldwin Road, Parsippany, Morris County, NJ 07054

1019 Park Street, Peekskill, Westchester County, NY 10566

3 Tree Farm Road, Pennington, Mercer County, NJ 08534

150 Newark-Pompton Turnpike, Pequannock, Morris County, NJ 07440

57 West Main Street, Ramsey, Bergen County, NJ 07446

128 Center Grove Road, Randolph, Morris County, NJ 07869

1591 Richmond Road, Staten Island, Richmond County, NY 10304

2 Prospect Street, Ridgefield, Fairfield County, CT 06877

94 North Maple Avenue, Ridgewood, Bergen County, NJ 07450

1070 Main Street, River Edge, Bergen County, NJ 07661

632 Westwood Avenue, River Vale Township, Bergen County, NJ 07675

1430 Old Country Road, Riverhead, Suffolk County, NY 11901

210 Enterprise Drive, Rockaway, Morris County, NJ 07866

187 Eagle Rock Avenue, Roseland, Essex County, NJ 07068

115 South Ridge Street, Rye Brook, Westchester County, NY 10573

1328 River Avenue, Lakewood, Ocean County, NJ 08701

157 Seventh Avenue, Newark, Essex County, NJ 07104

45 South New York Road, Smithville, Atlantic County, NJ 08205

302 Somers Commons, Baldwin Place, Westchester County, NY 10505

2935 Veterans Road West, Staten Island, Richmond County, NY 10309

25 Hill Street, Southampton, Suffolk County, NY 11968

53345 Main Road, Southold, Suffolk County, NY 11971

2407 Route 71, Spring Lake, Monmouth County, NJ 07762

599 Newfield Avenue, Stamford, Fairfield County, CT 06905

1320 Stony Brook Road, Stony Brook, Suffolk County, NY 11790

341 Springfield Avenue, Summit, Union County, NJ 07901

790 Queen Anne Road, Teaneck, Bergen County, NJ 07666

577 Lakehurst Road, Toms River, Ocean County, NJ 08755

80 Union Avenue, Cresskill, Bergen County, NJ 07626

365 Tucker Avenue, Union, Union County, NJ 07083

977 Valley Road, Gillette, Morris County, NJ 07933

277 Eisenhower Parkway, Livingston, Essex County, NJ 07039

7 East Prospect Street, Waldwick, Bergen County, NJ 07463

217 Berdan Avenue, Wayne, Passaic County, NJ 07470

1620 Route 23 North, Wayne, Passaic County, NJ 07470

767 Bloomfield Avenue, West Caldwell, Essex County, NJ 07006

133 Main Street, Westhampton Beach, Suffolk County, NY 11978

1 Paddock Plaza, West Long Branch, Monmouth County, NJ 07764

9 Marshall Hill Road, West Milford, Passaic County, NJ 07480

3495 Route 1 South, Princeton, Mercer County, NJ 08540

119 Central Avenue, Westfield, Union County, NJ 07090

596 Westport Avenue, Norwalk, Fairfield County, CT 06851

320 Mamaroneck Avenue, White Plains, Westchester County, NY 10605

108 Lacey Road, Whiting, Ocean County, NJ 08759

1002 Mantua Pike, Woodbury Heights, Gloucester County, NJ 08097

261 Godwin Avenue, Wyckoff, Bergen County, NJ 07481

1961 Commerce Street, Yorktown Heights, Westchester County, NY 10598

**THAT,** the aforementioned merger has been recognized as valid and effective as of the date and time of such filing.

*Witness, my hand and official seal of the Department of Financial Services at the City of New York, this 30th day of October in the year two thousand and fifteen.*

By_____

Shirin Emami

Executive Deputy Superintendent, Banking Division